# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
March 16, 2022
Lyle W. Cayce
Clerk

No. 21-50498

Vanessa St. Pierre,

*Plaintiff—Appellant*,

*versus*

Standard Insurance Company; Dearborn National Life Insurance Company,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CV-257

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:[*]

This case arises from a dispute involving a life insurance policy. Appellant Vanessa St. Pierre claims that she properly acquired a dependent life insurance policy on behalf of her deceased husband. Standard Insurance Company ("Standard") and Dearborn National Life Insurance Company

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50498

("Dearborn") (collectively, "Appellees") disagreed and moved to dismiss St. Pierre's claims. The district court issued a judgment in favor of Appellees and dismissed St. Pierre's suit. For the following reasons, we AFFIRM.

## I. Facts & Procedural Background

In June 2009, the City of El Paso (the "City") solicited offers from outside vendors to provide life insurance to city employees. Standard submitted its offer to the City, which included responses to a questionnaire. In that questionnaire, Standard told the City that it could send its representatives to open enrollment and orientation meetings "as needed," would offer a one-time special open enrollment that guaranteed the issuance of life insurance without evidence of insurability, and a guaranteed issue amount of $200,000 for its voluntary life insurance policies. The City accepted and contracted with Standard to be its insurance underwriter in December 2009.

Approximately five years later, in August 2014, St. Pierre became an employee for the City. She was given an Employee Benefits Summary that stated that all eligible employees automatically received $50,000 in life insurance coverage and $2,000 in dependent life insurance coverage on behalf of their spouse. The Summary further provided:

> **Supplemental Life.** Approvals up to $200,000 are guaranteed for new employees. After 30 days of continuous employment, changes can only be made with a qualifying life event or through Open Enrollment and subject to medical underwriting. Evidence of Insurability application for underwriting process will be required with waiting period of approximately six (6) weeks for an answer from carrier. Plan is age-graded term life policy.

St. Pierre attended an enrollment orientation session and filled out the 2014 Personal Enrollment Form, requesting supplemental life insurance in

the amount of $200,000 and dependent life insurance on behalf of her husband in the amount of $100,000. Next to the "Dependent Life – Spouse" coverage term, the form stated: "Pending E of I _____."[1] The form also provided:

> **TO ENROLL IN OR MAKE CHANGES TO THE FOLLOWING PLANS (SUPPLEMENTAL LIFE, DEPENDENT LIFE AND SHORT TERM DISABILITY) YOU MUST MEET WITH A REPRESENTATIVE. THEY WILL BE AVAILABLE DURING THE ENROLLMENT SESSIONS.**

The form further provided:

> **I UNDERSTAND THAT IT IS MY RESPONSIBILITY TO VERIFY THAT ALL PAYROLL DEDUCTIONS AS STATED ABOVE ARE CORRECT AND TO REPORT ANY DISCREPANCIES IN DEDUCTIONS ON MY PAYCHECK TO THE INSURANCE AND BENEFITS DIVISION IMMEDIATELY TO GUARANTEE PROPER COVERAGE AND CONTRIBUTIONS.**

A Standard representative was not present at the orientation, and St. Pierre never met with any representative, Standard or otherwise, to confirm her enrollment for dependent life coverage.

Thereafter, the City began deducting $9.00 from St. Pierre's bi-weekly paycheck for "Optional Life After Tax Ded[uction]." St. Pierre assumed this deduction covered both her supplemental life policy and the dependent life policy. However, the bi-weekly $9.00 deductions covered only her supplemental life policy. From 2015 through 2017, St. Pierre completed

---

[1] "Pending E of I" is shorthand for "Pending Evidence of Insurability."

her annual re-enrollment and each year, she indicated that she wished to maintain her current life insurance coverage.

In 2017, the City began negotiations with Dearborn to replace Standard as its life insurance underwriter. Dearborn's "final offer" to the City contained the following terms:

> A one-time modified open enrollment with Life insurance amounts of $50,000 for employees and $20,000 for spouses up to the Guarantee Issue Limit. Anyone wishing coverage over the Guarantee Issue Limit would still need to submit evidence of insurability. In the event someone does not wish to change their elected amounts, the current amounts will be grandfathered.

In November 2017, the City accepted Dearborn's offer to replace Standard as its life insurance underwriter.

During the 2018 Open Enrollment Session, St. Pierre filled out the enrollment form except for the life insurance and dependent life insurance rates because she did not know what those rates were, and the City did not send her a rate sheet. St. Pierre then told the human resources representative that she wanted to keep the same life insurance coverages that she previously had. Consequently, St. Pierre continued to have $200,000 in supplemental life insurance and no additional supplemental dependent life insurance.

On August 31, 2018, St. Pierre's husband passed away. She called the City's human resources benefits department to claim the dependent life insurance proceeds and learned that she did not have dependent coverage. The City offered to settle St. Pierre's claim for $20,000 but she declined. St. Pierre then submitted her claim directly to Dearborn, at its insistence. Upon receiving her claim, Dearborn sent St. Pierre a $2,000 check—the minimum amount of dependent life insurance for employees who did not elect for higher coverage. Dearborn then sent St. Pierre a letter informing her

No. 21-50498

that her claim for supplemental dependent coverage was rejected because she had failed to submit evidence of insurability.

St. Pierre first sued Dearborn and the City, but voluntarily dismissed her claims against the City. In her suit against Dearborn, St. Pierre argued that it violated the Texas Insurance Code and the Deceptive Trade Practices Act ("DTPA"). She also alleged that the City acted as an agent of Dearborn under Texas Insurance Code § 4001.003(1), making Dearborn liable for the City's actions. Finally, she alleged that Dearborn was estopped from denying coverage because it "implicitly promised the City that" it would not engage in any Texas Insurance Code or DTPA violations. The district court dismissed St. Pierre's suit without prejudice on grounds that the City could not act as Dearborn's agent under the Texas Insurance Code.

St. Pierre then filed a second lawsuit against Dearborn and Standard, advancing claims both as a consumer of the policy and as a third-party beneficiary of the contracts between the City and Appellees. This time, St. Pierre claimed that the City acted as an agent for Appellees under Texas common law, rather than the Texas Insurance Code. She then alleged that Appellees engaged in deceptive practices in violation of the Texas Insurance Code and the DTPA because (1) Appellees made false and misleading statements to the City; and (2) Appellees (themselves and through the City) failed to disclose information regarding the evidence-of-insurability requirement and pay-deduction rates. St. Pierre also brought a promissory estoppel claim alleging that Appellees were estopped from denying her coverage based on their promises to the City. Finally, she brought a breach-of-contract claim against Dearborn on grounds that it allowed her to be "victimized by 'inadvertent clerical errors or omissions.'"

Appellees moved to dismiss St. Pierre's claims, and the district court granted their motion. In a detailed 26-page opinion, the district court first

determined that the City could not act as Appellees' agent under common law. It then concluded that St. Pierre failed to state any viable claims against Appellees under the Texas Insurance Code or the DTPA because (1) she did not allege that Appellees ever misrepresented the benefits of the insurance policy to the City and/or (2) she did not allege that she reasonably relied to her detriment on Standard's representations to the City. Similarly, the district court held that St. Pierre failed to state a promissory estoppel claim because (1) she did not allege a promise by Appellees to the City upon which she could reasonably rely; and (2) even if there was such a promise, she did not allege that she reasonably relied on it. Finally, the district court explained that the breach-of-contract claim failed because St. Pierre did not allege conduct by Dearborn that breached any term of the insurance contract. This appeal ensued.

On appeal, St. Pierre argues that (1) the district court erred by concluding that the City could not act as a common-law agent of Appellees, because it "plac[ed] upon Ms. St. Pierre the burden of negating the unpled and disputed affirmative defense that the Texas Insurance Code preempted Texas common law"; and (2) the district court did not properly apply the pleading standard because it failed to read all factual allegations in her favor and improperly required a "linkage between the presumptively true statements of fact and the causes of action."

## II. Standard of Review

We review a district court's dismissal of a complaint for failure to state a claim de novo. *See* Fed. R. Civ. P. 12(b)(6); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). We must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 304-05 (5th Cir. 2015) (quoting *Montoya v. FedEx Ground*

*Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010)). But we need not accept as true a legal conclusion unsupported by fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III. Discussion

We first address St. Pierre's agency argument. Then, we turn to her argument that the district court misapplied the pleading standard.

#### A.

St. Pierre contends that the district court erred by finding that the City could not act as a common-law agent of Appellees, because it placed upon her "the burden of negating the unpled and disputed affirmative defense that the Texas Insurance Code preempted Texas common law." We disagree. A court need not, and should not, accept as true any legal conclusion that a plaintiff puts forward. *Iqbal*, 556 U.S. at 678. Here, the Texas Insurance Code plainly states that, for the purposes of the Code, "Agent" excludes "an employer . . . to the extent . . . [it] is engaged in the administration or operation of an employee benefits program." Tex. Ins. Code § 4001.003(1)(B). Because of this provision, St. Pierre's first action against Dearborn was dismissed. Now, in an attempt to avoid a similar ruling, she claims that an employer can still be an agent of an insurer when administering an employee benefits program under common law. She cites no common law to support this contention, however, because there is no such law.[2] Thus, the

---

[2] St. Pierre submits various pre-Insurance Code cases, and none since the Code was enacted, where Texas courts did consider employers agents of insurers for the purpose

No. 21-50498

district court properly concluded that the City did not act as an agent for Appellees under common law.

B.

Because the actions of the City cannot be imputed onto Appellees, St. Pierre must have alleged facts regarding Appellees' own actions that support her claims. She has failed to do so.

*A. Texas Insurance Code and Deceptive Trade Practices Act*

St. Pierre alleges that Appellees made misrepresentations and wrongful omissions to both the City and herself that violated various provisions of the Texas Insurance Code and the DTPA. But her factual allegations do not include any misrepresentations or wrongful omissions regarding the supplemental dependent life insurance she sought. Moreover, to state a claim under the Texas Insurance Code and the DTPA, she must allege that the wrongful act or practice was the "producing cause" of her damages. *See First Am. Title Co. of El Paso v. Prata*, 783 S.W.2d 697, 701 (Tex. App.—El Paso 1989); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) ("The DTPA authorizes consumer suits when deceptive acts are the producing cause of '[actual damages].'" (internal quotation marks omitted)). St. Pierre has failed to show how Standard's statements to the City in 2009, of which she was unaware when she applied for the dependent life policy, caused her harm in 2014. Accordingly, she has failed to state a claim under the Texas Insurance Code or the DTPA.

*B. Promissory Estoppel*

---

of deducting premiums. If anything, these cases demonstrate the effect of the Insurance Code in halting that treatment.

St. Pierre next claims that Appellees are estopped from denying the requested coverage because they misled the City into believing "that they would provide the necessary support to inform employees of their rights and obligations." Again, her argument fails.

Under Texas law, promissory estoppel requires "evidence of (1) a promise, (2) foreseeability of reliance, (3) actual, substantial, and reasonable reliance by the promisee to his or her detriment, and (4) that failure to enforce the promise would result in an injustice." *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Hous. 2012). A promise "must be more than mere speculation concerning future events"; rather, it must be "sufficiently specific and definite." *Id.*

Here, the promise is an implicit one to "provide the necessary support to inform employees of their rights and obligations," and thus lacks the requisite specificity. *But cf. Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 306 (Tex. App.—Corpus Christi 2012) (promise was one to pay a particular medical expense); *Walker v. Walker*, 631 S.W.3d 259, 264-65 (Tex. App.—Hous. 2020) (promise was one to transfer land-ownership interests). Moreover, St. Pierre could not have relied on this "promise" since she was unaware of it.[3]

*C. Breach of Contract*

Finally, St. Pierre contends that Dearborn breached its contract because the policy it issued promised that employees "would not be victimized by 'inadvertent clerical errors or omissions.'" Indeed, the policy

---

[3] St. Pierre contends she relied instead on the "good faith of her employer as de facto agent of [Appellees]," but as discussed *supra*, the City was not their agent. Even if she could so rely, she was expressly told that she needed to meet with a representative, which she did not, and that it was her responsibility to confirm that the payroll deductions were correct, which she failed to do.

provides: "Clerical error or omission by [Dearborn] to [the City] will not . . . [p]revent an Employee from receiving coverage, if he is entitled to coverage under the terms of the Policy." But St. Pierre has not alleged any facts to support her claim that Dearborn ever breached this term. At best, she alleges that the City or Standard made a clerical error by not informing her that her dependent life policy application was denied, but their actions cannot be imputed onto Dearborn. Thus, her breach of contract claim also fails.

## IV. Conclusion

For the foregoing reasons, the district court's judgment dismissing St. Pierre's claims against Appellees is AFFIRMED.