Case No. 21-50498

———————————

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

VANESSA ST. PIERRE,
Plaintiff-Appellant

v.

STANDARD INSURANCE COMPANY;
DEARBORN NATIONAL LIFE INSURANCE COMPANY,
Defendants-Appellees

———————————

Appeal from the United States District Court for the
Western District of Texas, El Paso Division

———————————

## PETITION OF APPELLANT FOR
## PANEL REHEARING

———————————

### Introduction

Appellant seeks panel rehearing because the short and unsigned Opinion of

the Court (attached hereto) contains serious and decisive omissions and other

mistakes of both fact and law in affirming the District Court's dismissal for failure

to state a claim.  At the risk of violating the Eleventh Commandment,[1] Appellant

and her counsel venture to say the Opinion of the Court is so deficient that it

---

[1] "Thou shalt not provoke thy jurist," a favorite saying of District Judge Lucius Desha Bunton
(deceased).

1

cannot be the product of the three veteran jurists on the panel. Appellant's counsel is personally familiar with their abilities, primarily through continuing education, but also by regular appearances for oral argument. A 47-year member of this Court's Bar, Appellant's counsel is also familiar with the work of the Staff Attorney's Office, the most likely source of the opinion. That office is a sweatshop in the best of times and unbearably burdened in the still dicey post-pandemic era.[2]

One widow's loss of $100,000, even through no fault of her own, does not seem important, compared to capital punishment criminal appeals and "bet the company" civil cases. It is, however, certainly serious to her and her children. The Court and its staff have done their best under catastrophically difficult conditions, but should not allow Appellant's case to go unnoticed.

## I.  Facts & Procedural Background

### A.  Issue Number One:  Complaint Presumed True

Appellant tried to make it as easy as possible for the Court to review the allegations in her Complaint, all of them presumed true. She did this by setting them out verbatim in her Opening Brief, advising the Court of why she was doing it. Brief of Appellant, Doc. 00516034708 (hereinafter, "Appellant's Brief"), pp.

---

[2] Counsel's admittedly dated knowledge of sweatshop conditions in the Staff Attorney's Office is from its former Chief, Mr. Anthony Bonfanti, a personal friend. The workload of the entire Fifth Circuit apparatus has obviously increased since Mr. Bonfanti's retirement.

14-15. If this Court does not actually read and consider those factual allegations, and does not further draw all inferences therefrom in Appellant's favor, then it does not follow the *Twombly-Iqbal* standard of review, as argued in Appellant's Issue Number 1. The factual content of this Petition will focus on significant facts which have not been discussed by the District Court or this Court, hoping the Court will consider facts and arguments which may have been overlooked.

### B.   Standard Insurance Company

Appellant began with eight pages containing a step-by-step account of how Standard and the City arrived at their contract between June 23 and December 11 of 2009. Id. pp. 15-22. As this Court reads the eight pages themselves, it will see 20 lines highlighted to indicate the facts contained in the District Court's opinion, embedded in great swaths of unhighlighted text which the District Court did not mention. This Court's Opinion reduces those eight pages to just ten lines. Opinion, Doc. 00516242060 (hereinafter "Opinion") p. 2. Standard's detailed and specific promises about coverages, information to employees, enrollment support, and electronic submission of evidence of insurability, all incorporated into the final agreement, were not mentioned in the Opinion of this Court or the District Court. Appellant's Brief, p. 22 (unhighlighted portions).

The Opinion then takes up Appellant's 2014 new employee orientation and her attempts to procure insurance on her own life and her husband's. The Opinion

3

acknowledges Standard's 2009 commitment to "offer a one-time special open enrollment that guaranteed issuance of life insurance **without** evidence of insurability and a guaranteed issue amount of $200,000 for its voluntary life insurance policies." Opinion, p. 2. This was juxtaposed in the Opinion with the "Employee Benefits Summary," which Appellant received on the second day of her new employee in-processing, **guaranteeing** approvals of supplemental life to new employees up to $200,000 **but requiring** "Evidence of Insurability." Id. The Opinion does not, however, address the patent ambiguities between and within Standard's commitments. In 2009, it guaranteed $200,000 of life insurance without evidence of insurability. In 2014, the Employee Benefits Summary said $200,000 was guaranteed, but not exactly because evidence of insurability was required. How can something be "guaranteed," but subject to evidence of insurability, with no information about to get it and where to send it?

The Opinion does not address Appellant's allegation that the language about guaranteed approval was consistent not only with the pre-contract negotiations but also the oral presentation about life insurance during orientation. Appellant's Brief, p. 23.

At page 23 of Appellant's Brief, there is an explanation of how the confusion only deepened during the 2014 new employee onboarding, when the 2009 promises of in-person help were most needed, but not provided. The Opinion

acknowledges the paper requirement for dependent life insurance applicants to meet with a representative and the absence of a Standard representative at orientation, without also acknowledging the impossibility of meeting with somebody who was not there.  Opinion, p. 3.  It only points out that Appellant "never met with any representative, Standard or otherwise."  Id.  The Opinion does not suggest who else she could have met with to satisfy the requirement.

It is undisputed that Appellant filled out **one form** for both life insurance coverages, and that she placed the form in channels, with no evidence of insurability whatsoever, so that it somehow made its way to Standard.  A few weeks later, she noticed a deduction on her pay voucher for life insurance and had no reason to suspect that Standard had granted the application for insurance on her own life but, *sub silencio*, denied it as to her husband.  If Standard and the City had acted responsibility, there would be pieces of paper requesting evidence of insurability as to both coverages.  Somehow, that did not happen.  And remember, Appellant had no reason to suspect anything untoward about the amount of the pay deduction, because she never had access to a rate sheet until after her husband had died.  She alleges that she "reasonably inferred" that the payroll deduction was for both coverages.  She **never** said that she "assumed" anything, as the District Court and the Opinion of this Court have said.

C.   Dearborn Insurance

The Opinion's omission of important facts continues in its treatment of Appellant's allegations, presumed true, against Dearborn.  These allegations take up just over five pages in Appellant's Brief, pp. 26-32.  The Opinion gives them about half of page 4.  The Opinion mentions two things:  the "grandfather" clause bridging coverage from Standard to Dearborn; and a brief summary of the 2018 open enrollment session (which actually took place in December of 2017), but with no details about what occurred.

The Opinion pretermitted any discussion of Dearborn's reassuring sales pitch to the City:  an agent residing in El Paso with an office walking distance from City Hall; an account service team led by an account manager working with the City on the transition to the new company; facilitation of client service training and evaluation of feedback.  Appellant's Brief, pp. 27-28.

The Opinion's brief discussion about Appellant's interaction with the City human resources representative omits a critical fact.  She told the HR rep that she did not know the rates to put in.  The HR rep did not know either, which supports an inference that Dearborn had not provided a rate sheet to the City, just as Standard had failed to do eight years earlier.  The rate sheet was finally included in the 32-page Employee Benefit Booklet, dated January 2, 2018, two days after the

close of 2018 open enrollment.   At some point, the Booklet was posted on the City's website.  Appellant's Brief, p. 33.

### D.   Procedural Background

This portion of the Opinion (pp. 4-6) glosses over significant facts pled by Appellant, which must be accepted as true, especially with no discovery permitted. The facts are set out in Appellant's Brief, pp. 22-23, at least a couple of which are especially significant.  Brenda Kinderman, a T.E.B. employee, found the time to attend the conference at HR as Dearborn's representative, which raises the question, why didn't she walk over to City Hall during open enrollment to see how things were going, thus to fulfill Dearborn's promise of adequate administrative support?   HR Director Mary Michel admitted the City's mistake in failing to deduct the premiums.  The significance of this fact is discussed infra at page 12, in connection with Appellant's breach of contract claim against Dearborn.

The Opinion also does not say anything about Appellant's attempt to tender the amount of the premiums which should have been deducted but were not, nor how that triggered Dearborn's request for indemnity and defense by the City.  In reciting Dearborn's denial of the claim for failure to submit evidence of insurability, there is no acknowledgment that, despite both insurance companies' supposed requirement for E of I as to both employee and dependent coverages, Appellant has **never** provided evidence of her own insurability.  However, the two

companies have been successively deducting premiums for her insurance every single paycheck for the past seven and a half years.    In the absence of any discovery about the companies' inconsistency in enforcing the supposed requirement, it is reasonable to infer that it might actually be honored only in the breach.

## II.   Standards of Review

Appellant's Opening Brief discusses this topic at some length, Appellant's Brief pp. 40-42.    The Opinion compresses them into a single paragraph, Opinion pp. 6-7, eliminating all of the cautionary language about precipitate use of *Twombly-Iqbal*.

## III.   Discussion

### A.   Issue Number Two:  Preemption

The Opinion treats Appellant's argument about Appellees' burden to plead and prove its preemption defense as a statement of fact which it "need not, and should not accept as true," citing *Iqbal*.    Opinion, p. 7.    Burden of pleading and proof is a quintessentially legal concept, and this Court is bound by the Supreme Court's decision in *MetLife Insurance Company v. Taylor*, 481 U.S. 58, 63 (1987), treating preemption as an affirmative defense.    It is further bound by its own decisions in *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) and *Bank of Louisiana v. Aetna U.S. Healthcare*, 468 F.3d 237 242 (5th Cir. 2006).    Appellant

cites all of these cases in her Opening Brief, and the Opinion does not address them.

Turning to the argument of common law agency, the Court reiterates the error of Appellant's counsel, overlooking the exception of employers from the Insurance Code definition of agent.  Opinion, pp. 7-8.  It continues:

> "Now, in an attempt to avoid a similar ruling, she claims that an employer can still be an agent of an insurer when administering an employee benefits program under common law.  She cites no common law to support this contention, however because there is no such law."

Id.  In a footnote, the Opinion adds, "St. Pierre submits various pre-Insurance Code cases, and none since the Code was enacted, where Texas courts did consider employers agents of insurers for the purpose of deducting premiums. If anything, these cases demonstrate the effect of the Insurance Code in halting that treatment." Id. n. 2.

The Opinion is literally true about the absence of any **Texas** courts weighing in on this issue.  The Opinion does not, however, mention Appellant's citation of a **reported** federal district court decision, four years after the effective date of the Code, continuing to hold Texas employers agents of their insurers for deduction of premiums from employees' salaries and payment of them to the insurance companies.  See *Clarke v. Allianz Global Risks U.S. Insurance Company*, 659 F.Supp.2d 751, 757 (N.D. Tex. 2009), citing *General American Life Insurance Company v. Gant*, 119 S.W.2d 693, 695-696 (Tex. Civ. App. – Austin 1938, writ

dism'd), discussed at page 7 of Appellant's Reply Brief (Doc. 00516102264). At the very least, preemption is an unsettled question under Texas law, which this Court should not resolve in a per curiam unpublished Opinion.

The Opinions of this Court and the District Court place great emphasis on the obvious inexperience of Appellant's counsel with the Texas Insurance Code. The focus here should instead be the serious and unsettled question about the preemptive force, vel non, of the Texas Insurance Code and the existence of at least one reported federal case contrary to this Court's Opinion.

B.  Issue number Three:  Alleged Pleading Deficiencies

Neither Appellees, nor the Opinion of this Court, address the Supreme Court's strong admonition of summary disposition based on wrong choices of legal theories:

> "Our decisions in [*Twombly* and *Iqbal*] are not in point, for they concern the factual allegations a complaint must contain to survive a motion to dismiss.  A plaintiff, they instruct, must plead facts sufficient to show that her claim has substantive plausibility.  Having informed the court of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of adequate statement of their claim.  The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary for plaintiff's claim for relief."

*Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014), reversing *Johnson v. City of Shelby*, 743 F.3d 59 (5th Cir. 2013).  Assuming the Court scrutinizes Appellant's

causes of action, despite such strong authority, it should not do so with the paucity of facts recited in the Opinion.

Discussing the Texas Insurance Code and Deceptive Trade Practices Act, the Opinion mistakenly says, "[Appellant's] allegations do not include any misrepresentations or wrongful omissions regarding the supplemental dependent life insurance coverage she sought," and it faults her for failing to use the term "producing cause." Opinion, p. 8. Both of the insurance companies entered contracts with the City to provide insurance on its employees' and spouses' lives, and to provide numerous forms of assistance, all enumerated in the Complaint and the Opening Brief, to ensure employees got what they ordered. Appellant was a third party beneficiary of these promises. Drawing all inferences in favor of Appellant, the allegation of producing cause may be inferred from the facts pled.

The Opinion also treats as significant that Appellant was unaware of the specific promises the insurance companies had each made to the City. She has made clear repeatedly, and it is undisputed, that she is suing as a third-party beneficiary, claiming that the **City** relied on the insurance companies' to **her** detriment. Since she was not privy to the discussions between the respective companies and the City, she had no way of being aware.

The Opinion parses Appellant's detailed recitation of important broken promises to the City into the single phrase, "provide the necessary support to

inform employees of their rights and obligations." Opinion, p. 9. Having set up this straw man, the Opinion knocks it down, saying that it "lacks the requisite specificity." Id.

Appellant's breach of contract claim, unspecified relief for inadvertent clerical errors or omissions, received considerable attention from the District Court (ROA.700-702), Appellant's Opening Brief (pp. 32-34, 57-58, 61-63), Appellees' Brief (Doc. 00516074688, pp. 44-47), and Appellant's Reply Brief (Doc. 00516102264, pp. 20-23). The Opinion gives it only ten lines (pp. 8-9), holding that Mary Michel's candor in apologizing was not attributable to Dearborn because of Insurance Code preemption. Appellant thoroughly briefed the preemption issue in her Opening Brief (pp. 37-42), Reply Brief (pp. 7-9), and this Petition (pp. 8-10). This is an important issue of Texas law, which this Court should either definitively resolve or refer to the Texas Supreme Court.

The clause in question is triggered either by "clerical error or omission by Us [Dearborn] to the Policyholder [the City];" or "if the [City] gives [Dearborn] information about an employee that is incorrect." ROA.159. The Court should note Dearborn's refusal in *St. Pierre 1* (ECF 18, p. 24 of 34) to define the term "clerical error." That refusal, coupled with the lack of any discovery about Appellees' handling of Appellant's attempts to get spousal coverage, suggests that

summary dismissal of her case with only minimal discovery in the prior case, is not a proper application of Rule 12(b)(6) or *Twombly-Iqbal*.

### Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays the Court grant this Petition for Rehearing, and upon such rehearing, reverse the decision of the District Court and remand it thereto for proceedings consistent with the new Opinion.

RESPECTFULLY SUBMITTED this 30th day of March, 2022.

*/s/ Michael T. Milligan*
**MICHAEL T. MILLIGAN**
4171 N. Mesa St., Suite B-201
El Paso, Texas 79902
915-544-5587
915-544-2773
Email:  elpasomike13@aol.com
Texas Bar No. 14148200

ATTORNEY FOR PLAINTIFF-APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that, on March 30, 2022, the foregoing document has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on all registered counsel of record:

Andrew F. MacRae
Levantino Pace PLLC
1101 Capital of Texas Highway
Building K, Suite 125
Austin, Texas 78746
Email: andrew@lpfirm.com

Richard Bonner
Kemp Smith LLP
P. O. Box 2800
El Paso, Texas 79999
Email: richard.bonner@kempsmith.com

_____*/s/ Michael T. Milligan*_____
MICHAEL T. MILLIGAN

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of Fed. R. App. P. 40(b)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,779 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 10 in 14-point Times New Roman font.

_____*/s/ Michael T. Milligan*_____
MICHAEL T. MILLIGAN
Attorney for Plaintiff-Appellant

# OPINION SOUGHT TO BE REVIEWED

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2022

Lyle W. Cayce
Clerk

No. 21-50498

Vanessa St. Pierre,

*Plaintiff—Appellant,*

*versus*

Standard Insurance Company; Dearborn National Life
Insurance Company,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:20-CV-257

Before Barksdale, Stewart, and Dennis, *Circuit Judges.*

Per Curiam:*

This case arises from a dispute involving a life insurance policy. Appellant Vanessa St. Pierre claims that she properly acquired a dependent life insurance policy on behalf of her deceased husband. Standard Insurance Company ("Standard") and Dearborn National Life Insurance Company

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50498

("Dearborn") (collectively, "Appellees") disagreed and moved to dismiss St. Pierre's claims. The district court issued a judgment in favor of Appellees and dismissed St. Pierre's suit. For the following reasons, we AFFIRM.

## I. FACTS & PROCEDURAL BACKGROUND

In June 2009, the City of El Paso (the "City") solicited offers from outside vendors to provide life insurance to city employees. Standard submitted its offer to the City, which included responses to a questionnaire. In that questionnaire, Standard told the City that it could send its representatives to open enrollment and orientation meetings "as needed," would offer a one-time special open enrollment that guaranteed the issuance of life insurance without evidence of insurability, and a guaranteed issue amount of $200,000 for its voluntary life insurance policies. The City accepted and contracted with Standard to be its insurance underwriter in December 2009.

Approximately five years later, in August 2014, St. Pierre became an employee for the City. She was given an Employee Benefits Summary that stated that all eligible employees automatically received $50,000 in life insurance coverage and $2,000 in dependent life insurance coverage on behalf of their spouse. The Summary further provided:

> **Supplemental Life.** Approvals up to $200,000 are guaranteed for new employees. After 30 days of continuous employment, changes can only be made with a qualifying life event or through Open Enrollment and subject to medical underwriting. Evidence of Insurability application for underwriting process will be required with waiting period of approximately six (6) weeks for an answer from carrier. Plan is age-graded term life policy.

St. Pierre attended an enrollment orientation session and filled out the 2014 Personal Enrollment Form, requesting supplemental life insurance in

the amount of $200,000 and dependent life insurance on behalf of her husband in the amount of $100,000. Next to the "Dependent Life – Spouse" coverage term, the form stated: "Pending E of I _____."[1] The form also provided:

> **TO ENROLL IN OR MAKE CHANGES TO THE FOLLOWING PLANS (SUPPLEMENTAL LIFE, DEPENDENT LIFE AND SHORT TERM DISABILITY) YOU MUST MEET WITH A REPRESENTATIVE. THEY WILL BE AVAILABLE DURING THE ENROLLMENT SESSIONS.**

The form further provided:

> **I UNDERSTAND THAT IT IS MY RESPONSIBILITY TO VERIFY THAT ALL PAYROLL DEDUCTIONS AS STATED ABOVE ARE CORRECT AND TO REPORT ANY DISCREPANCIES IN DEDUCTIONS ON MY PAYCHECK TO THE INSURANCE AND BENEFITS DIVISION IMMEDIATELY TO GUARANTEE PROPER COVERAGE AND CONTRIBUTIONS.**

A Standard representative was not present at the orientation, and St. Pierre never met with any representative, Standard or otherwise, to confirm her enrollment for dependent life coverage.

Thereafter, the City began deducting $9.00 from St. Pierre's bi-weekly paycheck for "Optional Life After Tax Ded[uction]." St. Pierre assumed this deduction covered both her supplemental life policy and the dependent life policy. However, the bi-weekly $9.00 deductions covered only her supplemental life policy. From 2015 through 2017, St. Pierre completed

---

[1] "Pending E of I" is shorthand for "Pending Evidence of Insurability."

No. 21-50498

her annual re-enrollment and each year, she indicated that she wished to maintain her current life insurance coverage.

In 2017, the City began negotiations with Dearborn to replace Standard as its life insurance underwriter. Dearborn's "final offer" to the City contained the following terms:

> A one-time modified open enrollment with Life insurance amounts of $50,000 for employees and $20,000 for spouses up to the Guarantee Issue Limit. Anyone wishing coverage over the Guarantee Issue Limit would still need to submit evidence of insurability. In the event someone does not wish to change their elected amounts, the current amounts will be grandfathered.

In November 2017, the City accepted Dearborn's offer to replace Standard as its life insurance underwriter.

During the 2018 Open Enrollment Session, St. Pierre filled out the enrollment form except for the life insurance and dependent life insurance rates because she did not know what those rates were, and the City did not send her a rate sheet. St. Pierre then told the human resources representative that she wanted to keep the same life insurance coverages that she previously had. Consequently, St. Pierre continued to have $200,000 in supplemental life insurance and no additional supplemental dependent life insurance.

On August 31, 2018, St. Pierre's husband passed away. She called the City's human resources benefits department to claim the dependent life insurance proceeds and learned that she did not have dependent coverage. The City offered to settle St. Pierre's claim for $20,000 but she declined. St. Pierre then submitted her claim directly to Dearborn, at its insistence. Upon receiving her claim, Dearborn sent St. Pierre a $2,000 check—the minimum amount of dependent life insurance for employees who did not elect for higher coverage. Dearborn then sent St. Pierre a letter informing her

that her claim for supplemental dependent coverage was rejected because she had failed to submit evidence of insurability.

St. Pierre first sued Dearborn and the City, but voluntarily dismissed her claims against the City. In her suit against Dearborn, St. Pierre argued that it violated the Texas Insurance Code and the Deceptive Trade Practices Act ("DTPA"). She also alleged that the City acted as an agent of Dearborn under Texas Insurance Code § 4001.003(1), making Dearborn liable for the City's actions. Finally, she alleged that Dearborn was estopped from denying coverage because it "implicitly promised the City that" it would not engage in any Texas Insurance Code or DTPA violations. The district court dismissed St. Pierre's suit without prejudice on grounds that the City could not act as Dearborn's agent under the Texas Insurance Code.

St. Pierre then filed a second lawsuit against Dearborn and Standard, advancing claims both as a consumer of the policy and as a third-party beneficiary of the contracts between the City and Appellees. This time, St. Pierre claimed that the City acted as an agent for Appellees under Texas common law, rather than the Texas Insurance Code. She then alleged that Appellees engaged in deceptive practices in violation of the Texas Insurance Code and the DTPA because (1) Appellees made false and misleading statements to the City; and (2) Appellees (themselves and through the City) failed to disclose information regarding the evidence-of-insurability requirement and pay-deduction rates. St. Pierre also brought a promissory estoppel claim alleging that Appellees were estopped from denying her coverage based on their promises to the City. Finally, she brought a breach-of-contract claim against Dearborn on grounds that it allowed her to be "victimized by 'inadvertent clerical errors or omissions.'"

Appellees moved to dismiss St. Pierre's claims, and the district court granted their motion. In a detailed 26-page opinion, the district court first

determined that the City could not act as Appellees' agent under common law. It then concluded that St. Pierre failed to state any viable claims against Appellees under the Texas Insurance Code or the DTPA because (1) she did not allege that Appellees ever misrepresented the benefits of the insurance policy to the City and/or (2) she did not allege that she reasonably relied to her detriment on Standard's representations to the City. Similarly, the district court held that St. Pierre failed to state a promissory estoppel claim because (1) she did not allege a promise by Appellees to the City upon which she could reasonably rely; and (2) even if there was such a promise, she did not allege that she reasonably relied on it. Finally, the district court explained that the breach-of-contract claim failed because St. Pierre did not allege conduct by Dearborn that breached any term of the insurance contract. This appeal ensued.

On appeal, St. Pierre argues that (1) the district court erred by concluding that the City could not act as a common-law agent of Appellees, because it "plac[ed] upon Ms. St. Pierre the burden of negating the unpled and disputed affirmative defense that the Texas Insurance Code preempted Texas common law"; and (2) the district court did not properly apply the pleading standard because it failed to read all factual allegations in her favor and improperly required a "linkage between the presumptively true statements of fact and the causes of action."

## II. Standard of Review

We review a district court's dismissal of a complaint for failure to state a claim de novo. *See* FED. R. CIV. P. 12(b)(6); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018). We must "accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 304-05 (5th Cir. 2015) (quoting *Montoya v. FedEx Ground*

*Package Sys., Inc.*, 614 F.3d 145, 146 (5th Cir. 2010)). But we need not accept as true a legal conclusion unsupported by fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter that, when taken as true, "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. Discussion

We first address St. Pierre's agency argument. Then, we turn to her argument that the district court misapplied the pleading standard.

### A.

St. Pierre contends that the district court erred by finding that the City could not act as a common-law agent of Appellees, because it placed upon her "the burden of negating the unpled and disputed affirmative defense that the Texas Insurance Code preempted Texas common law." We disagree. A court need not, and should not, accept as true any legal conclusion that a plaintiff puts forward. *Iqbal*, 556 U.S. at 678. Here, the Texas Insurance Code plainly states that, for the purposes of the Code, "Agent" excludes "an employer . . . to the extent . . . [it] is engaged in the administration or operation of an employee benefits program." Tex. Ins. Code § 4001.003(1)(B). Because of this provision, St. Pierre's first action against Dearborn was dismissed. Now, in an attempt to avoid a similar ruling, she claims that an employer can still be an agent of an insurer when administering an employee benefits program under common law. She cites no common law to support this contention, however, because there is no such law.[2] Thus, the

---

[2] St. Pierre submits various pre-Insurance Code cases, and none since the Code was enacted, where Texas courts did consider employers agents of insurers for the purpose

district court properly concluded that the City did not act as an agent for Appellees under common law.

B.

Because the actions of the City cannot be imputed onto Appellees, St. Pierre must have alleged facts regarding Appellees' own actions that support her claims. She has failed to do so.

*A. Texas Insurance Code and Deceptive Trade Practices Act*

St. Pierre alleges that Appellees made misrepresentations and wrongful omissions to both the City and herself that violated various provisions of the Texas Insurance Code and the DTPA. But her factual allegations do not include any misrepresentations or wrongful omissions regarding the supplemental dependent life insurance she sought. Moreover, to state a claim under the Texas Insurance Code and the DTPA, she must allege that the wrongful act or practice was the "producing cause" of her damages. *See First Am. Title Co. of El Paso v. Prata*, 783 S.W.2d 697, 701 (Tex. App.—El Paso 1989); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) ("The DTPA authorizes consumer suits when deceptive acts are the producing cause of '[actual damages].'" (internal quotation marks omitted)). St. Pierre has failed to show how Standard's statements to the City in 2009, of which she was unaware when she applied for the dependent life policy, caused her harm in 2014. Accordingly, she has failed to state a claim under the Texas Insurance Code or the DTPA.

*B. Promissory Estoppel*

---

of deducting premiums. If anything, these cases demonstrate the effect of the Insurance Code in halting that treatment.

St. Pierre next claims that Appellees are estopped from denying the requested coverage because they misled the City into believing "that they would provide the necessary support to inform employees of their rights and obligations." Again, her argument fails.

Under Texas law, promissory estoppel requires "evidence of (1) a promise, (2) foreseeability of reliance, (3) actual, substantial, and reasonable reliance by the promisee to his or her detriment, and (4) that failure to enforce the promise would result in an injustice." *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 635 (Tex. App.—Hous. 2012). A promise "must be more than mere speculation concerning future events"; rather, it must be "sufficiently specific and definite." *Id.*

Here, the promise is an implicit one to "provide the necessary support to inform employees of their rights and obligations," and thus lacks the requisite specificity. *But cf. Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys. Corp.*, 398 S.W.3d 303, 306 (Tex. App.—Corpus Christi 2012) (promise was one to pay a particular medical expense); *Walker v. Walker*, 631 S.W.3d 259, 264-65 (Tex. App.—Hous. 2020) (promise was one to transfer land-ownership interests). Moreover, St. Pierre could not have relied on this "promise" since she was unaware of it.[3]

### C. Breach of Contract

Finally, St. Pierre contends that Dearborn breached its contract because the policy it issued promised that employees "would not be victimized by 'inadvertent clerical errors or omissions.'" Indeed, the policy

---

[3] St. Pierre contends she relied instead on the "good faith of her employer as de facto agent of [Appellees]," but as discussed *supra*, the City was not their agent. Even if she could so rely, she was expressly told that she needed to meet with a representative, which she did not, and that it was her responsibility to confirm that the payroll deductions were correct, which she failed to do.

No. 21-50498

provides: "Clerical error or omission by [Dearborn] to [the City] will not . . . [p]revent an Employee from receiving coverage, if he is entitled to coverage under the terms of the Policy."  But St. Pierre has not alleged any facts to support her claim that Dearborn ever breached this term. At best, she alleges that the City or Standard made a clerical error by not informing her that her dependent life policy application was denied, but their actions cannot be imputed onto Dearborn. Thus, her breach of contract claim also fails.

## IV. Conclusion

For the foregoing reasons, the district court's judgment dismissing St. Pierre's claims against Appellees is AFFIRMED.